FILED

JUN 1 1 2007

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

E-FILED
Monday, 11 June, 2007 02:21:25 PM
Clerk, U.S. District Court, ILCD

Paula Mitchell
1837 Taylor Ave
Springfield IL 62703

Request For Certificate of Appealability On Habeas Corpus Petition #3020

Defendant Mitchell is petitioning the court for a Certificate Of Appealability regarding the denial of her Habeas Corpus Petition Case # 3020 on the following grounds:

1. Defendant Mitchell's petition was well qualified for a Direct Appeal to the Federal Court system on the grounds that at least one State of IL. Official (Officer E. Staab) used illegal means to deprive the Defendant Mitchell of her affirmative defense and the use of illegal means to infect the court/judicial process automatically amounts to a denial of due process. Defendant Mitchell has the right to direct Federal appeal when circumstances exist that render State processes ineffective to protect her rights and the court has traditionally held that such serious conduct as the violation of Constitutional rights automatically qualifies a claim for direct appeal. Furthermore, the due process violation did severely infect the entire judicial process because the evidence tampering substantially changed Ms. Mitchell's standing with the court from a position granting her immunity from punishment (legal innocence) to a status authorizing punishment (guilty). Ms Mitchell felt compelled to accept a plea bargain in order to avoid prison time when she likely could not have even been charged with a crime at all had it not been for the evidence tampering. Had the State even sought to bring charges, which is doubtful, Ms Mitchell would have by no means been subject to punishment. True duress grants immunity from punishment.

2. The court improperly concluded that they had no jurisdiction to act in an instance where a criminal defendant was denied access to an affirmative defense because the entire reason for the existence of the U.S. Constitution is that of preventing the government from using unfair or illegal means in order to maneuver themselves into a position that authorizes them to inflict punishments upon citizens and or to deprive them of their property. Governmental theft of an affirmative defense is as improper as an unlawful search and seizure. The court has jurisdiction to act in this case because the deprivation of an affirmative defense represents illegal maneuvering. Defendant Mitchell's status was in effect changed from one of "legal innocence" which would have granted her immunity from punishment to one of "guilty" which entailed punishment. The court has jurisdiction to act when a local or state government engages in illegal activity which causes a criminal defendant to qualify for punishment where s/he would otherwise not have just as the Federal government has acted on cases in the past where defendants have qualified for "more severe" punishments than they would otherwise have qualified for as a direct result of the unethical/illegal behavior on the part of local or state government officials.

3. The court's refusal to recognize the status of "legal innocence" with regard to Habeas Corpus proceedings is Unconstitutional because it violates the "Equal Protections" clauses of the U.S. Constitution. Either the status of "legal innocence" exists for all or it exists for none. If the Federal Courts recognize the status of "Legal Innocence" for any proceedings whatsoever, it must also recognize such status with regard to Habeas Corpus proceedings. To do otherwise violates the Constitutional guarantee of Equal treatment under the law. This is particularly true because the government has held traditionally that the central issue of a Habeas Corpus proceeding is not one of guilt or innocence, but rather whether the criminal defendant is being held in contradiction of the U.S. Constitution or it's Treatises. The court only recognized the status of actual/absolute innocence because doing so enabled the court to set the situation straight in the interests of ultimate justice. However, the court can not condone the punishment of persons who would have otherwise had immunity from punishment but for the illegal acts of a state or local govt. official. No fruit of a poisoned tree can be used for the purposes of convicting anyone under the U.S. Constitution. The Constitution makes no distinction between actual innocence and "legal" innocence. It merely establishes that the criminal defendant's right to (all) exculpatory evidence is to be compulsory and absolute. In tampering with the audiovisual recording, Officer Staab and others deprived the plaintiff of exculpatory evidence in violation of her Constitutional Right to compulsory access to the same. This is a violation that infected the entire judicial process and for this reason, Defendant Mitchell is entitled to a reversal of her conviction.

But for the illegal maneuverings of at least one State of IL employee, Ms. Mitchell could not have been held at all and likely wouldn't ever have been charged. This case is no different than one in which a government official conducts an illegal traffic stop in order to try to catch someone with drugs. Any result or fruit of a poisoned tree can not stand. As aforementioned, Officer Staab's tampering with evidence caused Ms. Mitchell to qualify for a status in which the government could "punish" her when they otherwise could not have. Officer Staab's evidence tampering violated the plaintiff's Constitutional rights to due process and access to exculpatory evidence. Such interference can not be condoned, nor rewarded. Officer Staab's conduct did indeed infect the entire judicial proceeding because it substantially altered the plaintiff's standing with the court from one granting immunity from punishment to one entailing punishment and the act which caused the alteration in the plaintiff's legal standing was illegal. Since Officer Staab's conduct was illegal in and of itself, the plaintiff must be released from custody without regard to actual guilt or innocence in compliance with the tradition of Habeas Corpus proceedings.

4. Defendant Mitchell's request that the court conduct her Habeas Corpus Review concurrently with her Civil suit does not constitute a violation of any laws, rules, or procedures because the court had the authority to hear both issues and thus the order/succession with which the court hears and rules upon such matters is immaterial. Furthermore, her request was for something that is routinely and customarily done with regard to the desire to make the most efficient use of court resources. Does it not make sense to use such concurrent hearings in order to best achieve the end result of true justice as well? Concurrent hearing of such claims where there the civil court may be able to tender to the habeas corpus hearing new evidence of actual/absolute innocence would enable the court to better address the needs of individuals who have been previously wrongfully convicted just as does the courts current practice of hearing Habeas Corpus petitions that involve assertions of actual innocence. Such requests should be honored in a limited number of instances where a specific request such as the authentication of an audiovisual recording could tender to the court proof of actual innocence. The CD version of the audiovisual recording used to prosecute the case proves that Defendant Mitchell did not kick Officer Staab in the abdomen/pelvis and thus she is innocent of that charge. Furthermore, Defendant Mitchell is absolutely certain that expert authenticators will be able to prove that she didn't kick Officer Copeland either, but rather an unknown falsifier moved him closer to her on film in order to make it appear that she had done so in violation of a number of Defendant Mitchell's Constitutional Rights (due process, compulsory access to exculpatory evidence, etc). Such concurrent hearing of a Habeas Corpus case along with a related Civil suit is not improper and in fact should be encouraged anytime there exists a strong probability that the civil suit can illuminate proof of either legal or actual innocence.

5. Defendant Mitchell's Habeas Corpus petition should not have been denied because new evidence has been developed which proves that defendant Mitchell did not commit the most serious of the offenses for which she plead guilty. The CD version of the audiovisual recording is much clearer than the VHS version. While defendant Mitchell was unable to prove she had not kicked Officer Staab on the basis of the VHS version, that fact is absolutely verifiable on the CD version. Defendant Mitchell's innocence with regard to that issue can be certified and thus the fine she is paying and her punishment with regard to that offense is inappropriate. The CD version of the recording was not available at the time of Defendant Mitchell's trial. The different methods by which CD & VHS recording devices store information causes certain information/anomalies to be more or less apparent on one version as opposed to another and for this reason, the availability of the CD version is significant with regard to this case.

6. The Court appears to assert that Defendant Mitchell failed to exercise due diligence by questioning whether or why Defendant Mitchell would not have known from the very beginning that she were being held in violation of the US Constitution and acting on that knowledge. However, the court's contention is fatally flawed in that it presumes that knowledge is always actionable when that is not necessarily the case.

Knowledge does not necessarily equate to action-ability. While Ms. Mitchell has always known that the officers primarily involved in her arrest had not acted honorably and had always been untruthful about the true nature of the situation she was not able to prove it. Of what benefit is knowledge without proof? "Due

Diligence" can not require foolhardiness. The plaintiff (Mitchell) did everything she could to try to fight for her vindication. In the end, she was left with three police officers willing to lie for each other, State prosecutors willing to let the officers lie and ignore the fact that the qualify of the tape was such that it should not have been used to prosecute anyone with, and numerous officials within the Secretary of State and IL. Office of Inspector General's office who were also willing to go along with the unethical behavior of the day. All she had was her word that she had not kicked them and her claims that the arrest was unlawful, and that excessive force was used to entrap her, etc. They left her nothing to assert her innocence with. Had the plaintiff gone to trial with nothing but her "word of honor" against the word of a number of people who automatically get credibility for being great guys who always tell the truth and have our best interests at heart; she would most surely have been convicted. Ms Mitchell isn't the guilty party here. The guilty ones are those who would commit perjury and tamper with evidence in order to wrongfully convict a single parent and send her to jail simply because they don't like her. The court's contention that knowledge automatically connects with action-ability is fatally flawed. People quite often know about things they lack the power to change.

Defendant Mitchell made "extensive" attempts prompt an investigation that would ultimately vindicate her but was refused many times. Defendant Mitchell did exercise due diligence with regard to her concerns about the illegality of her prosecution and punishment. In July 2005, Defendant Mitchell filed written, formal complaints with the IL. Secretary of State's Office, IL. State Prosecutor's Office, IL. Office of Inspector General's Office, NAACP, and the ACLU. Having been unsuccessful in those regards, she filed a formal written complaint with the FBI in approx. October 2005 urging an investigation into her various complaints and still was refused such. In February 2006, she circulated a letter urging her fellow Illinoisans to phone various officials and complain about the handling of her case in order to attempt to force an investigation to ensue which could have vindicated her. She also mailed a photocopy of the letter she was circulating to every one of her elected officials and to several who don't represent her. Having failed at that endeavor as well, she tendered one final appeal to the IL. Secretary of State's Office, IL. Office of Inspector General's Office, and FBI in approx August 2006 in order to yet again request an investigation that could vindicate her.

Defendant Mitchell is not a skilled investigator and thus at that time felt compelled to rely upon those employed by her government to perform any necessary investigations in the interests of all fairness and was refused. These acts and this presumption is very reflective of a person who is acting with a great deal of due diligence. Defendant Mitchell had a right to have her complaints investigated just as does every other citizen and yet this was not done and it placed her at a distinct disadvantage with regard to proving her innocence of the charges lodged against her. The Court's insinuation that Defendant Mitchell failed to exercise due diligence with regard to her illegal detention is not accurate. Defendant Mitchell was powerless as a direct result of the unlawful acts of a number of government officials who engaged in willful blindness and multiple derrelictions to duty in order to intentionally permit and continue Ms. Mitchell's unlawful detention.

Defendant Mitchell's knowledge that she was being held in violation of the US Constitution was not previously actionable for a number of reasons. First, as aforementioned, numerous government officials engaged in willful blindness and derrelicted their duties to investigate Ms. Mitchell's complaints.

Second, Ms. Mitchell is not a skilled investigator and can not be required to act as such with regard to due diligence. Ms Mitchell can only be required to act upon knowledge that is readily accessible to the vast majority of persons. She can not be required to act like a person who possesses specialized knowledge or skills. The idea that it is possible to prove that an audiovisual recording has been tampered with when you have access only to the recording itself and no other proof such as whom had direct access to the tape and when, etc is not something that an average person would possess. It is not part of the general consciousness. Rather, it lies solely within the realm of the expert authenticator and of those who routinely discern the admissibility of audiovisual recordings for court hearings.

The average person does not have ready access to such information. In fact, even the skilled investigators involved in this case did not consider that to be a possibility. Had they thought for even one minute that Ms.

Mitchell would have been able to prove they had falsified the audiovisual recording while having access only to that recording and no direct evidence would they have provided her with it? No one is going to knowingly give any other person direct access to evidence that could be used to imprison or impeach them; least of all skilled investigators who make it their business to trip others up. That they freely gave Ms. Mitchell access to the tape bears witness to the fact that they never in a million years would have thought she would be able to turn it against them. This clearly demonstrates the fact that the knowledge that it is possible to prove a tape has been falsified while having access only to the tape itself is not part of the general consciousness. Even those who tendered the tape to Defendant Mitchell didn't believe they would ever be caught by her. If they didn't expect her to figure it out, how can the court conclude that she was not duly diligent? Knowledge relating to how to prove an audiovisual recording has been tampered with is sufficiently technical and specialized and is not within the general purview of an average person.

Third, Ms. Mitchell could not as a matter of the exercise of due process be required to assume the mindset of an anarchist. The government is not an ordinary party to a dispute but is one who has the added responsibility to act with utmost propriety and honesty. The obligation of the government to govern impartially is as compelling as it's obligation to govern at all. However, in this case, one governmental official conducted an unlawful arrest and then tampered with audiovisual evidence and tendered perjurious documents to the court in an attempt to conceal her previous illegal & unethical acts. Numerous others aided and abetted her in her efforts in a number of ways including derrelictions to duty, exercising willful blindness, using their lawfully granted powers in unauthorized ways, and by permitting her to have unfettered access to an audiovisual recording in order that she could falsify it. In order to prove her innocence in this case, Ms. Mitchell had to assume that practically every governmental official she had appealed to with regard to her complaints was unethical. In fact, that is precisely what she found. However, it wasn't until she welcomed that possibility and decided to test her theorem that she was able to uncover information that could vindicate her. The assumption of the mindset of an anarchist can not be considered to lie within the purview of "due diligence." Democratic governments govern at the behest of the people. Thus, the engendering of a hatred for the government in any person subject to the government's rule is counterproductive and non-conducive to the best interests of that government. Therefore, as a matter of practicality "due diligence" can not require that any person be compelled to assume the mindset of an anarchist nor can any person be forced to presume that their government has acted unethically and/or illegally in order to convict them. That person(s) may be required to reach that conclusion is a great tragedy, and it can not in any manner be considered to be a function of "due process."

Finally, Defendant Mitchell is fully confident that her Civil Suit will eventually tender proof of actual innocence and thus she is asking the court to grant her a certificate of appealability that preserves for her the ability to appeal her Habeas Corpus Petition denial until 30 days post the conclusion of her civil trial or post the tendering of the expert authenticator's written report to the court and Ms Mitchell-- whichever the court deems most appropriate. Ms Mitchell has already developed proof of the fact that she could not possibly have injured Officer Staab in the manner described. Ms. Mitchell is fully confident that the authenticators will vindicate her because they will likely be able to develop proof that Officer Copeland was not kicked by her as well but rather was moved closer to her by an unknown evidence falsifier. The court has recently established it's ability and interest in correcting situations where a criminal defendant is actually innocent of the charges s/he has been convicted of. In keeping with such interest, the court should either reverse it's denial of Ms. Mitchell's Habeas Corpus petition on the grounds that proof of her "legal innocence" has already been tendered to the court in the form of actual duress and on the grounds that Ms. Mitchell is being held in contradiction of the U.S. Constitution because the State government used illegal means in order to rob her of her affirmative defense which constitutes exculpatory evidence in this case. Barring that, the court should in the very least preserve for the plaintiff the appealability of her case until such time as the expert authenticator's report becomes available due to the strong likelihood that it may tender proof of actual innocence.

*Paula B Mitchell* (signature)